*In re* MUSKEGON COUNTY BOARD OF COMMISSIONERS

Docket No. 128374. Submitted December 12, 1990, at Grand Rapids. Decided April 1, 1991, at 10:10 A.M.

The Muskegon County Sheriff and Muskegon County Prosecutor brought in the Muskegon Circuit Court two actions against the Muskegon County Board of Commissioners, seeking funding for more jail space and staff because of chronic overcrowding at the Muskegon County jail. The cases were assigned to Chief Judge Ronald H. Pannucci. On the board's motion, Judge Pannucci was disqualified from presiding in those cases. Thereafter, Judge Pannucci, in the exercise of the authority granted to the chief circuit judge pursuant to the county jail overcrowding act, MCL 801.51 *et seq.*; MSA 28.1748(1) *et seq.*, and in response to the sheriff's declaration of a jail overcrowding emergency, directed the sheriff to transfer prisoners to jails in other counties and to refrain from the early release of prisoners. Sixty prisoners were transferred to other jails until that overcrowding emergency ceased. Later, in response to another overcrowding emergency, Judge Pannucci, pursuant to the jail overcrowding act and in his capacity as chief judge, classified the prisoners in the jail into low-risk and high-risk groups, fixed the minimum and maximum percentage by which the sheriff could reduce the sentences of the low-risk prisoners, and directed the sheriff to release no high-risk prisoners. The Muskegon County Board of Commissioners brought an action for superintending control in the Court of Appeals against Chief Judge Pannucci, claiming that he had exceeded the authority granted chief circuit judges in the county jail overcrowding act. The Muskegon County Sheriff intervened as an interested party.

The Court of Appeals *held:*

While the method adopted by the defendant to classify pris-

REFERENCES

Am Jur 2d, Judges §§ 22, 25, 86 *et seq.*; Penal and Correctional Institutions §§ 8, 149, 222-224.

See the Index to Annotations under Judges; Prison Guards or Officials; Prisons and Prisoners; Sheriffs.

oners into high-risk and low-risk groups was a proper exercise of the broad discretion vested in chief circuit judges by the jail overcrowding act, the defendant exceeded his authority under that act by directing the sheriff not to release high-risk prisoners. Further, although the defendant properly undertook to exercise the administrative authority vested by the act in chief circuit judges without first having a trial or holding an evidentiary hearing and the defendant properly continued to exercise these administrative functions as chief circuit judge despite having been disqualified from presiding as trial judge in two actions brought by the county sheriff and prosecutor, the order entered by the defendant pursuant to that grant of administrative authority transferring the prisoners to other jails was in excess of the authority granted under the jail overcrowding act. Accordingly, the defendant in his capacity as chief circuit judge must cease and desist from interfering with the Muskegon County Sheriff's statutory authority with respect to the release of high-risk prisoners and must cease and desist from administratively ordering the transfer of prisoners from the Muskegon County jail to jails in other counties.

1. The county jail overcrowding act grants broad authority to chief circuit judges in the classification of prisoners into high-risk and low-risk groups for the purpose of the act, and the method of classification adopted by the defendant was not an abuse of discretion. Furthermore, an action for superintending control brought by the county board of commissioners is not the proper means to challenge the exercise of the chief judge's discretion.

2. Because the county jail overcrowding act specifically requires that sheriffs release high-risk prisoners under certain circumstances, the defendant exceeded his authority in directing the sheriff not to release any high-risk prisoners.

3. The order transferring the prisoners to jails in other counties was entered by the defendant in the exercise of the administrative authority vested in him as the chief circuit judge by the county jail overcrowding act. Because the defendant was exercising his administrative authority, no trial or evidentiary hearing was required. The disqualification of the defendant from presiding as a trial judge in the actions involving the question of the overcrowding of the Muskegon County jail did not act to disqualify the defendant from exercising his statutorily granted administrative authority as the chief circuit judge. The defendant, however, exceeded that administrative authority by ordering the transfer of the prisoners to jails in other counties, there being no statutory basis for the adminis-

trative transfer of prisoners from an overcrowded jail to an-
other jail.

An order of superintending control will be issued.

1. JUDGES — CIRCUIT JUDGES — COUNTY JAIL OVERCROWDING ACT —
   CLASSIFICATION OF PRISONERS.

   The provision of the county jail overcrowding act requiring the
   chief circuit judge of a county in which an overcrowded jail is
   located to classify prisoners into groups whose release would
   present high and low risk to the public safety vests in the chief
   circuit judge broad discretion relative to the criteria used to
   make the classifications (MCL 801.56[3]; MSA 28.1748[6][3]).

2. SUPERINTENDING CONTROL — CIRCUIT JUDGES — COUNTY JAIL
   OVERCROWDING ACT — PRISONER CLASSIFICATION.

   An action for superintending control brought by a county board
   of commissioners is not an appropriate means to test the
   validity of the criteria used by the chief judge of the county's
   circuit court in classifying prisoners for the purpose of the
   county jail overcrowding act (MCL 801.56[3]; MSA 28.1748[6]
   [3]).

3. JUDGES — CIRCUIT JUDGES — COUNTY JAIL OVERCROWDING ACT —
   SHERIFFS — RELEASE OF PRISONERS.

   The chief circuit judge of a county in which there is county jail
   overcrowding is without authority to direct the sheriff of the
   county not to release any prisoners who were classified as high-
   risk prisoners by the judge pursuant to the provisions of the
   county jail overcrowding act, because that act by its terms
   requires the sheriff to release high-risk prisoners under certain
   circumstances (MCL 801.57; MSA 28.1748[7]).

4. JUDGES — CIRCUIT JUDGES — COUNTY JAIL OVERCROWDING ACT —
   ADMINISTRATIVE AUTHORITY — EVIDENTIARY HEARINGS.

   Acts taken by a chief circuit judge pursuant to the provisions of
   the county jail overcrowding act are an exercise of the chief
   circuit judge's administrative authority and may be undertaken
   without first having a trial or evidentiary hearing (MCL 801.51
   et seq.; MSA 28.1748[1] et seq.).

5. JUDGES — CIRCUIT JUDGES — DISQUALIFICATION OF JUDGES —
   COUNTY JAIL OVERCROWDING ACT.

   The disqualification of a chief circuit judge from presiding in an
   action brought by the county sheriff and county prosecutor
   against the county board of commissioners seeking funds and

personnel to alleviate overcrowding at the county jail in itself
does not disqualify the chief circuit judge from exercising the
administrative authority granted by the county jail overcrowd-
ing act (MCL 801.51 *et seq.*; MSA 28.1748[1] *et seq.*).

6. JUDGES — CIRCUIT JUDGES — COUNTY JAIL OVERCROWDING ACT —
ADMINISTRATIVE AUTHORITY — TRANSFER OF PRISONERS.

A chief circuit judge of a county experiencing overcrowding of its
jail may not order, in the exercise of the administrative author-
ity granted by the county jail overcrowding act, the transfer of
prisoners from the overcrowded jail to the jail in another
county where there is no overcrowding (MCL 801.51 *et seq.*;
MSA 28.1748[1] *et seq.*).

*Vander Ploeg, Ruck, Luyendyk & Wells* (by
*Stephen C. Corwin*), for the plaintiff.

*McCroskey, Feldman, Cochrane & Brock, P.C.*
(by *Eric C. Lewis*), for the Muskegon County Sher-
iff's Department.

Before: MAHER, P.J., and SAWYER and BRENNAN,
JJ.

SAWYER, J. This original action comes before us
on plaintiff's complaint for an order of superin-
tending control, which requests us to direct defen-
dant, the Chief Judge of the Muskegon Circuit
Court, to take certain actions, and to refrain from
taking certain other actions, with respect to the
ongoing overcrowding problems at the Muskegon
County jail. We conclude that defendant has ex-
ceeded his authority in some respects and grant
some of the relief requested by plaintiff.

This action arises out of a chronic overcrowding
problem at the Muskegon County jail and ongoing
disputes between the Muskegon County Sheriff
and the Muskegon County Prosecuting Attorney
on the one hand and the Muskegon County Board
of Commissioners on the other hand. The sheriff

has been faced with a grossly overcrowded jail[1] and a board of commissioners which is apparently unwilling to implement any solutions to the problem beyond allowing the early release of inmates under the county jail overcrowding act (JOA). MCL 801.51 *et seq.*; MSA 28.1748(1) *et seq.*

The sheriff was faced with additional problems because the staffing at the jail failed to meet the minimum requirements established by the Department of Corrections, which had directed the sheriff to increase the number of deputies on duty at the jail. The sheriff sought additional funding from the county to increase the number of deputies. Plaintiff has apparently taken the position that the sheriff's budget is sufficient and that, if necessary, the sheriff should transfer deputies from the road patrol to jail duty.

The instant dispute began when the sheriff, on January 26, 1990, declared an overcrowding emergency under the JOA.[2] Under § 5 of the JOA,[3] during the first fourteen days of an overcrowding emergency, various local officials, including the sheriff, prosecutor, judges, the county commissioners, and the county executive, are directed to take whatever action, individually and collectively, which might be within their power to take in order to relieve the overcrowding problem. The statute,

---

[1] The rated design capacity of the Muskegon County jail is 187 inmates. At times, the inmate population at the jail has exceeded 300. It should be noted that plaintiff has taken the position that the capacity of the jail is 225 inmates. Plaintiff takes this position despite the fact that the Department of Corrections, which has oversight authority over county jails and determines the design capacity of jails, has informed Muskegon County that the rated design capacity of its jail is only 187 inmates. In any event, the inmate population in the Muskegon County jail has exceeded even 225 inmates.

[2] MCL 801.52; MSA 28.1748(2). Under this provision, the sheriff must declare an overcrowding emergency if the inmate population exceeds one hundred percent of the rated design capacity of the jail for seven consecutive days.

[3] MCL 801.55; MSA 28.1748(5).

while authorizing these officials to take such action, does not specifically command that specific steps be taken to alleviate the overcrowding situation. Thus, the success of § 5 in addressing the problem depends to a great extent on the willingness of the local officials to take action and the realistic availability of such remedies. In any event, such action in Muskegon County did not relieve the problem.

If the actions taken pursuant to § 5 do not, within fourteen days of the declaration of the emergency, reduce the jail population to the higher of ninety percent of the rated design capacity or ten empty beds,[4] then under § 6[5] the sheriff must notify the chief circuit judge and provide the judge with a list of all prisoners, including information such as the reason for incarceration and the length of the sentence. The chief circuit judge then classifies the prisoners either high risk or low risk and sets a minimum and maximum percentage by which the sentences of low-risk prisoners may be reduced to relieve the overcrowding. The sheriff then reduces the sentences of low-risk inmates by an equal percentage within the minimum and maximum. This step was apparently ineffectual in relieving the overcrowding emergency in Muskegon County.

Meanwhile, the Muskegon County Sheriff and Prosecuting Attorney joined in filing two lawsuits against the Muskegon County Board of Commissioners, demanding more funding for jail space and more staff to cope with the overcrowding. These cases were eventually assigned to defendant. However, the board sought to have defendant disqualified from these suits. Defendant initially

---

[4] Twenty-five empty beds for jails with a capacity of five hundred beds or more.

[5] MCL 801.56; MSA 28.1748(6).

denied the motion, and the matter was assigned to a visiting judge appointed by the state court administrator. The visiting judge ruled that defendant be disqualified. It should be noted that defendant, after denying the disqualification motion, declared the JOA to be unconstitutional. Defendant took this action despite the Supreme Court's ruling in *Kent Co Prosecutor v Kent Co Sheriff (On Rehearing)*, 428 Mich 314; 409 NW2d 202 (1987), wherein the Court ruled the JOA constitutional.

Pursuant to the visiting judge's determination that defendant should be disqualified, the matter was reassigned to another visiting judge, Judge Kolenda of the Kent Circuit Court. Judge Kolenda ultimately reversed the determination of unconstitutionality of the statute. To add to the complexity of the situation, the Muskegon County Sheriff and Prosecutor filed a third action against the board, seeking a transfer of inmates to other county jails in an effort to relieve the overcrowding situation in the Muskegon County jail. This action was ultimately consolidated with the first two and assigned to Judge Kolenda. Further, inmates of the Muskegon County jail eventually sought to intervene as plaintiffs in the three suits and sought certification as a class. Ultimately, the sheriff and prosecutor sought to dismiss these actions without prejudice. The actions were dismissed, except for a counterclaim raised by the board. The inmates were certified as a class and were allowed to intervene, limited to the questions relating to enforcement of the JOA. Judge Kolenda further ordered that the sentences of all inmates in the Muskegon County jail as of June 4, 1990, be reduced by thirty-five percent in order to alleviate the overcrowding. If that sentence reduction did not lower the inmate population to 177 inmates, then the sheriff was to defer acceptance of new

prisoners, with certain exceptions.[6] The propriety of Judge Kolenda's rulings are not before us.

These facts serve as background information and are not directly involved in the matter before us. Rather, it is the actions of defendant on April 27, 1990, and thereafter, which give rise to the instant action. Defendant had issued an order to the county board chairman, the sheriff, prosecuting attorney, and chief district judge to appear in his chambers the morning of April 27. A meeting was held off the record to discuss the overcrowding problem. Defendant then took the bench and issued an order directing the sheriff to transfer prisoners to other county jails in western Michigan and further directed the sheriff not to release inmates from incarceration. The sheriff was to transfer a sufficient number of inmates to reduce the inmate population to 225. The costs of the transfers were to be paid out of the sheriff's budget.

Pursuant to defendant's order, the sheriff transferred sixty inmates to the Newaygo County jail on April 29. On May 3, the sheriff notified defendant of this action and reported that the inmate population had been reduced to 203 inmates and that, as of the May 3 memorandum, the inmate population stood at 218. Defendant responded by issuing an order which found that the overcrowding emergency had ended and ordered all inmates returned to the Muskegon County jail.[7]

On May 31, 1990, defendant issued a memorandum to the sheriff classifying prisoners into low- and high-risk groups and establishing a minimum and maximum percentage by which the sentences

---

[6] See MCL 801.58; MSA 28.1748(8).

[7] This apparently occurred and resulted in another overcrowding emergency.

of low-risk prisoners would be reduced. Defendant further directed that

> [n]o high risk offenders shall be released, since the Muskegon County Board of Commissioners has refused to make a good faith attempt to significantly reduce jail population per MCL 801.55 [MSA 28.1748(5).]

Having set this superintending control action in context, we may now turn to the issues raised by plaintiff. Plaintiff seeks to have us declare that defendant must comply with the mandatory release provisions of the JOA and to issue a directive to defendant addressing what he must do in discharging his duties under the JOA. In the alternative, plaintiff requests that we remove defendant from his responsibilities of administering the JOA. Next, plaintiff seeks to have us declare that defendant lacks the authority to order the transfer of prisoners to other county jails and, presumably, direct defendant to abstain from again ordering such transfers.

Plaintiff first complains that defendant has classified prisoners into high- and low-risk groups in such a way as to ensure that very few prisoners are classified low risk. Plaintiff cites defendant's May 31 memorandum to the sheriff in support of this argument. Plaintiff argues that the JOA requires that defendant make a meaningful classification of prisoners into the two groups, that defendant has failed to do so, and that we should direct him to do so.

MCL 801.56(3); MSA 28.1748(6)(3) provides:

> After the chief circuit judge for the county in which the jail is located reviews the information presented by the sheriff pursuant to subsection (2), the chief circuit judge shall, for purposes of county

jail population reduction, classify the prisoners into 2 groups: those prisoners who, if released, would present a high risk to the public safety, and those who, if released, would not present a high risk to the public safety. The chief circuit judge shall also determine a minimum and a maximum percentage by which the sentences can be reduced. The sheriff shall reduce the sentences of all prisoners who, if released, would not present a high risk to the public safety by an equal percentage which is within the minimum and maximum percentages determined by the chief circuit judge.

The statute itself provides no specific guidance or criteria for a chief circuit judge to apply in classifying prisoners. In the case at bar, defendant has classified the prisoners, but apparently has done so utilizing criteria which result in relatively few prisoners being classified low risk.[8]

We decline plaintiff's request to grant relief on this issue. First, it appears that defendant is complying with the strict terms of the statute. That is, defendant is classifying prisoners into high- and low-risk groups. With regard to how defendant has been classifying the prisoners, we again decline to interfere at this point. Inasmuch as the statute sets forth no criteria for classifying prisoners, we may conclude that under the statute broad discretion is vested in the chief circuit judge in the classification of prisoners. We will not legislate criteria which the Legislature has chosen not to include in its statute. Furthermore, a broad grant of discretion to the chief circuit judge is essential. A chief circuit judge may well wish to classify

---

[8] It should be noted that the classification of prisoners into the high-risk category does not ultimately preclude these prisoners from receiving sentence reductions. If the sentence reductions of low-risk prisoners are inadequate to address the problem, then the sentences of all prisoners are reduced, up to thirty percent, in an attempt to reduce the jail population to the applicable level below capacity. MCL 801.57; MSA 28.1748(7).

prisoners differently depending on the circumstances presented in a particular overcrowding emergency. The chief circuit judge should be afforded this discretion so that he may have the flexibility to address each overcrowding crisis in a manner which relieves the jail overcrowding with the least threat to the safety of the community. Accordingly, we will grant the broadest possible deference to a chief circuit judge's classification of prisoners.

Furthermore, the present superintending control action is not the appropriate vehicle to challenge defendant's classification of prisoners. We fail to see what standing plaintiff has to challenge defendant's classification of prisoners. Ultimately all prisoners will have sentence reductions if necessary to relieve the overcrowding. If those reductions are insufficient to address the problem, the sheriff must begin deferring acceptance of new prisoners, with certain exceptions. See MCL 801.58; MSA 28.1748(8). This does not directly affect the rights or obligations of plaintiff.

Rather, any such challenge should come in response to a particular classification of prisoners by the chief circuit judge during a specific jail overcrowding emergency. Such challenge must be brought by an interested party, such as an inmate classified as high risk,[9] a county sheriff who believes the chief circuit judge's classification of prisoners is inadequate to deal with the overcrowding problem faced by the sheriff, or, conceivably, the prosecuting attorney in his role as the chief law enforcement officer of the county.

Finally on this point, even if this is the appropriate manner to challenge the classification and plaintiff is the proper party to raise the challenge,

---

[9] Presumably no inmate would object to being classified low risk.

plaintiff has made no showing that defendant's classification of prisoners in his May 31 memorandum constitutes an abuse of discretion. That is, plaintiff has offered nothing to establish that prisoners classified high risk were, in fact, low risk.

We do, however, agree that defendant failed to exercise his obligations under the JOA when he directed the sheriff not to release any high-risk prisoners. More accurately, defendant impermissibly interfered with the sheriff's discharge of his obligations under § 7 of the JOA. MCL 801.57; MSA 28.1748(7) requires that if, after twenty-eight days from the declaration of a jail overcrowding emergency, the jail population has not been sufficiently reduced, the sheriff *shall* reduce the sentences of all prisoners by the least percentage possible, not to exceed thirty percent, necessary to reduce the inmate population to an acceptable level. No discretion is vested in the sheriff in this regard, nor does the chief circuit judge have any role to play in the operation of this section of the statute.

Accordingly, defendant exceeded his authority when he directed the sheriff in the May 31 memorandum not to release any high-risk prisoners because of plaintiff's lack of good faith in addressing the problem. The sheriff had no choice but to do so if the deadline under § 7 passed and the jail remained overcrowded. While defendant's characterization of plaintiff's conduct in dealing with the problem may be accurate, that conduct would not authorize defendant to direct the sheriff not to release high-risk prisoners. Defendant simply lacked the authority to do so. Accordingly, we direct defendant to cease and desist such interference with the sheriff's discharge of his nondiscretionary duties under § 7 of the JOA.

Plaintiff's brief also expresses concern with defendant's compliance with MCL 801.58; MSA

28.1748(8). That section of the JOA provides that, if the jail population is not reduced to the applicable level within forty-two days of the declaration of the overcrowding emergency, the sheriff must defer acceptance of any new prisoners, with certain exceptions. Furthermore, subsection 2 provides that either the sheriff or the sentencing judge may petition the chief circuit judge to approve the acceptance of a prisoner who would otherwise be deferred upon a showing of threat to the public safety if the prisoner is deferred. However, as plaintiff's brief admits, defendant has not interfered with the sheriff's obligations under this section, nor is there any showing that defendant has abused his discretion, either in an individual case or as an ongoing pattern, with respect to his authority to authorize the incarceration of a prisoner who would otherwise be deferred. Accordingly, superintending control on this point would be inappropriate.

We now turn to the events of April 27, 1990. Specifically, plaintiff complains that defendant acted improperly in ordering the transfer of prisoners to other county jails. Plaintiff first argues that defendant acted improperly when he took action without conducting a trial or hearing on the issue whether plaintiff was acting in good faith in addressing the jail overcrowding problem. We disagree with the proposition that defendant was obligated to hold an evidentiary hearing or trial. First, we should note that defendant did not, as plaintiff suggests in his brief, make the finding that plaintiff was not acting in good faith at the April 27 meeting. Rather, that finding came in the May 31 memorandum to the sheriff.

In any event, we view defendant's actions of April 27, including the order to transfer prisoners, as being taken in defendant's *administrative* ca-

pacity as chief circuit judge. We are aware of no requirement that an evidentiary hearing or trial precede the exercise of administrative authority by a chief judge or court.[10] Since defendant's actions were administrative in nature, rather than judicial action in a litigation matter, the procedures employed were adequate.

Plaintiff alleges in its brief that had an evidentiary hearing been held it could have shown that, contrary to defendant's finding in the May 31 memorandum, plaintiff has taken action to address the jail overcrowding problem. However, even accepting plaintiff's conclusory statements to this effect as true, it does not change the fact that, in April and May of 1990, plaintiff had failed to discharge its clear legal duty to provide jail space for county prisoners. MCL 45.16; MSA 5.291 provides in pertinent part:

> Each organized county shall, at its own cost and expense, provide . . . a suitable and sufficient jail.

MCL 45.16a; MSA 5.291(1) allows counties to meet this obligation by arranging for the housing of prisoners in other facilities:

> In lieu of providing a jail, as required in section 16 [MCL 45.16; MSA 5.291], each county may contract with other counties for the use of such counties' jails.

It is undisputed that there has been a continuing overcrowding problem at the Muskegon County jail. Indeed, plaintiff's brief in support of the complaint for superintending control begins by

---

[10] Plaintiff's brief alludes to Administrative Order No. 1985-6, 424 Mich lxxxv; Mich Ct R, p A 1-31. That administrative order, however, is inapplicable because it deals solely with disputes between courts and the local funding authority.

stating that the jail has continuously exceeded its design capacity since January 1990. In fact, at least at one point, the jail population stood in excess of 300 inmates, more than 113 inmates in excess of the jail's rated design capacity. The sheriff was even apparently required to house inmates in the jail's gymnasium. There is no indication from the record, nor does plaintiff even allege, that this condition is due to unforeseen and unusual circumstances which caused a temporary increase in the inmate population, such as a civil insurrection in Muskegon. Rather, all indications from the record are that the overcrowding condition at the Muskegon County jail is chronic and will continue.

It may well be that plaintiff has acted in good faith to address this problem, though the record would not seem to support this conclusion. However, the fact remains that the overcrowded conditions at the jail in the first half of 1990 demonstrate that plaintiff has failed miserably to discharge its clear legal duty under the quoted statutes. Under those statutes, plaintiff has a legal obligation to provide for the housing of prisoners. It may do so either by building a jail which is "suitable and sufficient" under MCL 45.16; MSA 5.291 or by contracting with other counties to house prisoners under MCL 45.16a; MSA 5.291(1). It is clear that plaintiff has failed to discharge its duty by refusing to do either. The Muskegon County jail is insufficient to house Muskegon County's prisoners, and plaintiff has steadfastly refused to appropriate funds and contract with other counties to house its prisoners. The declaration of an overcrowding emergency and the necessity to reduce prisoners' sentences under the JOA is prima facie evidence of this.

However, the mere fact that plaintiff has failed

to discharge its statutory duties with respect to the jail does not compel the conclusion that defendant was authorized to administratively order the transfer of prisoners. Accordingly, we turn to plaintiff's remaining arguments with respect to this issue. Plaintiff argues that defendant was not authorized to take action because he had been disqualified from presiding over the litigation brought by the Muskegon County Sheriff and Muskegon County Prosecuting Attorney against plaintiff. We disagree.

Defendant was disqualified from presiding over the litigation then pending before him which arose out of the jail overcrowding problem. Defendant was not disqualified from acting as chief circuit judge. In fact, we are aware of no authority, nor does plaintiff cite any authority, for the proposition that a chief judge may be disqualified from acting as chief judge. MCR 2.003 deals with the disqualification of a judge from presiding over a "proceeding"; i.e., a lawsuit. Further, the chief judge rule, MCR 8.110, provides for no mechanism by which a chief judge may be disqualified from acting in his administrative capacity as chief judge. Presumably there are circumstances in which a chief judge may not wish to act in his administrative capacity because of ethical considerations.[11] This, however, involves the chief judge's own ethical considerations and the judge's personal decision to defer to the chief judge pro tempore.[12]

Although there are no provisions to compel the disqualification of a chief judge from acting in his

[11] For example, the chief judge's spouse may be seeking a contract with the court to provide goods or services. Given the obvious financial conflict of interest, the chief judge might wish to decline to act on the matter and defer the decision to the chief judge pro tempore.

[12] The chief judge's decision in such an area would, of course, be subject to review by the Judicial Tenure Commission.

administrative capacity, the court rules do provide review mechanisms. First, and foremost, is an action for superintending control. Next, where the chief judge has acted unethically, review by the Judicial Tenure Commission is available. Also, where the chief judge has demonstrated an ongoing inability to discharge his administrative functions, his fellow judges could simply not reelect him to the chief judgeship at the end of his term. Finally, where circumstances warrant, the Chief Justice possesses the authority to remove a chief judge. MCR 8.110(D)(1). Thus, we must conclude that while the court rules contemplate controls over the chief judge's execution of administrative authority, they do not contemplate the disqualification of a chief judge from acting as chief judge.

Therefore, defendant retained his authority as chief circuit judge to execute his administrative functions under the JOA and related statutes. However, it is important to underscore the fact that this authority, in fact, is limited to the administrative responsibilities of the chief circuit judge and does not encompass the broad authority of a circuit judge to fix a remedy in an action at equity. Thus, while defendant continues to possess the authority to discharge his responsibilities under the JOA as chief circuit judge, his authority is limited to that which is administratively vested in the chief circuit judge.

Plaintiff next asks us to conclude that defendant lacks the inherent power to direct an expenditure of monies for the housing of prisoners. However, defendant did not directly order such expenditures of monies by plaintiff. Rather, defendant ordered the prisoners transferred. Upon inquiry by plaintiff's counsel, defendant clarified that the costs of these transfers would be borne by the sheriff, not plaintiff. This does not amount to a directive to

expend funds, and certainly not by plaintiff. Obviously, as defendant acknowledged, the sheriff would incur costs in order to comply with defendant's order, and that might even prompt the sheriff to seek a supplemental appropriation from plaintiff. However, it is often the case that compliance with a court order incurs a cost by those obligated to abide by the court's order.

This is not a case of a court ordering the appropriation of funds as was presented in *Employees and Judge of the Second Judicial Dist Court v Hillsdale Co*, 423 Mich 705; 378 NW2d 744 (1985). In *Hillsdale,* a consolidated case, two judges, a district judge and a circuit judge, entered administrative orders directing the counties involved to pay additional wages to court employees beyond the amounts which the counties had appropriated. The Supreme Court concluded that the trial courts involved could not order the appropriation of additional monies by administrative order. The Court did *not* conclude that local funding units could not be compelled to increase appropriations. Rather, the Court held that such action must be taken by way of litigation before a neutral judge:

> We hold that MCR 8.112(B) does not provide authority to compel expenditures and conclude that when agreement cannot be reached between a court and a funding unit, the court may initiate suit and shall bear the burden of proof regarding expenditures in excess of appropriations. [*Id.* at 716.]

This, however, is not a case of a court seeking to increase its own funding by administrative order. Thus, *Hillsdale* is not directly on point. Further, *Hillsdale* recognizes that, when the appropriate procedures are followed, the courts do have the inherent authority to order local funding units to

meet their statutory obligations with respect to appropriations. Indeed, *Hillsdale, supra* at 721, provides a basis for the conclusion that plaintiff *could* be compelled to appropriate the funds either to build a "suitable and sufficient" jail or to provide for the housing of prisoners in other facilities:

> Where the Legislature has by statute granted authority or created a duty, the local funding unit may not refuse to provide adequate funding to fulfill the function.

The real question before us is not whether defendant possesses the inherent authority to order plaintiff to expend the funds necessary to provide jail space for all of Muskegon County's prisoners. *Hillsdale* makes it rather clear that he does when acting in his "judicial," as opposed to "administrative," capacity. Further, as noted above, there was no direct order to plaintiff to appropriate money. Rather, defendant ordered the transfer of prisoners to other facilities. Thus, the question before us is whether defendant possesses the authority to order the transfer of prisoners by administrative action as chief circuit judge rather than in the exercise of his judicial function while presiding over an actual case pending before the court.

Defendant justified his order to transfer prisoners on two bases. First, defendant purported to order the transfer of prisoners under § 5 of the JOA.[13] Section 5, however, grants no such authority. By its own terms, § 5 grants no new authority to any official. Rather, it allows local officials to attempt to relieve an overcrowding problem "through any available means which are already within the scope of their individual and collective legal authority." The statute then provides a list of

[13] MCL 801.55; MSA 28.1748(5).

possible actions for local authorities to take. It includes such things as judicial review of bail for reduction or release on recognizance, alternative sentencing, and acceleration of judicial proceedings. Section 5 also suggests the possibility of the sheriff making alternate housing arrangements for prisoners.

Section 5 does not, however, require the sheriff to make alternate housing arrangements. Indeed, § 5 does not mandate that any official actually do anything. It merely provides a fourteen-day period for local officials who are so inclined to take action, which is already within their power to take, to abate the overcrowding emergency before the sentence reductions begin under § 6. More importantly, there is no grant of power under § 5, or anywhere else in the JOA, authorizing the chief circuit judge to administratively order the transfer of prisoners.

Defendant also justified his order under MCL 801.107; MSA 28.1757, which provides:

> If in any county there shall not be a jail, or the jail erected shall become unfit or unsafe for the confinement of prisoners, or shall be destroyed by fire or otherwise, the circuit judge of the circuit court . . . shall . . . designate the jail of some other county for the confinement of the prisoners of such county; which shall thereupon . . . become the jail of the county for which it shall have been so designated.

Defendant found that the Muskegon County jail, because of overcrowding,[14] was unfit and unsafe for the population. Defendant then designated, under the above statute, "any other jail that the sheriff

---

[14] Defendant noted that the inmate population had exceeded three hundred the previous weekend.

can find in the State of Michigan for confinement as a county jail."

We agree with plaintiff that MCL 801.107; MSA 28.1757 does not authorize the actions taken by defendant. That statute was intended to address the situation where a county jail becomes completely unfit for the incarceration of inmates and must be closed, or for some other reason a county finds itself without a jail at all. It was not enacted as a mechanism to relieve jail overcrowding. This statute, which can be traced back to 1846 RS, ch 148, § 7, undoubtedly served to provide the sheriff with the authority to house prisoners outside the county when the county had no jail or the county jail was closed.[15] Furthermore, even by its terms, MCL 801.107; MSA 28.1757 does not authorize the chief circuit judge to order the transfer of prisoners. Rather, it merely directs the chief circuit judge, under certain circumstances, to designate the county jail of another county as the county jail of the circuit judge's county. Thus, even if it were appropriate under the statute for defendant to designate another county jail as Muskegon County's jail, there is no grant of authority under the statute permitting defendant to order the transfer of prisoners to such other jail.

For the above reasons, we conclude that defendant grossly exceeded his authority by administratively ordering the transfer of prisoners. A chief circuit judge is granted no such authority by either statute or court rule. While it is likely that a judge possesses the authority to order the transfer of prisoners, and the appropriation of funds accordingly, in a mandamus action against a county sheriff or the county board of commissioners to

---

[15] MCL 45.16a; MSA 5.291(1), which explicitly authorizes a county to contract with another county to house prisoners, was enacted much later, being added by 1968 PA 93.

compel them to comply with their duties as imposed by statute and the constitution with respect to the housing of county prisoners, no such mandamus action was pending before defendant. Accordingly, defendant is directed to cease and desist from ordering the transfer of prisoners from the Muskegon County jail by administrative action as chief judge of the Fourteenth Judicial Circuit.

For the above reasons, we conclude that plaintiff is entitled to some, though not all, of the relief requested. Accordingly, an order of superintending control shall issue and shall provide as follows:

> The Court of Appeals having authorized the filing of a complaint for superintending control and having found that defendant, acting in his administrative capacity as chief circuit judge of the Fourteenth Judicial Circuit, has exceeded his lawful authority, IT IS ORDERED that defendant, Judge Ronald H. Pannucci, Chief Judge of the Fourteenth Judicial Circuit, shall cease and desist from interfering with the Sheriff of Muskegon County in exercising his nondiscretionary duties under MCL 801.57; MSA 28.1748(7) with respect to the release of high-risk prisoners;
>
> IT IS FURTHER ORDERED that defendant, Judge Ronald H. Pannucci, Chief Judge of the Fourteenth Judicial Circuit, shall cease and desist from administratively ordering the transfer of prisoners from the Muskegon County jail to facilities in other counties.