Cavanagh, J.
 

 Defendant appeals by leave granted from the circuit court order affirming the judgment and sentence entered in the district court. The circuit court found that defendant’s constitutional rights were not violated by a delay of more than five years between the time defendant was sentenced to serve ninety days in jail and the execution of the sentence. We reverse.
 

 On April 19, 1991, defendant pleaded guilty of operating a motor vehicle while having an unlawful blood alcohol level, MCL 257.625; MSA 9.2325, in the Sixty-Third District Court. Because defendant had two 1986 convictions for driving while impaired, the district court sentenced him to ninety days in jail. In addition, defendant was ordered to pay fines and costs of $800, and his driver’s license was suspended for two years.
 

 Defendant was instructed to return home until further notice because of a shortage of jail space. In April 1992, defendant-was notified that he had been denied work release. Soon afterward, defendant, who was unemployed at the time, contacted the court and requested that he be allowed to serve his sentence. However, the court told him.that it was not possible for him to serve his sentence at that time.
 
 [1]
 

 
 *615
 
 Over four years later, defendant received a letter dated May 20, 1996, informing him that he was to report to the jail on July 15, 1996, to serve his ninety-day sentence. Attached to the letter was the judgment of sentence, which was dated June 22, 1994. On receipt of this notice, defendant retained counsel and appealed to the Kent Circuit Court. Defendant contended that the district court lacked jurisdiction to enforce the sentence and that the implementation of the sentence after so long a time violated his constitutional rights to due process and a speedy trial. Defendant requested that the circuit court enter an order nullifying the district court’s order of jail confinement. The circuit court remanded the matter to the district court for an explanation of the delay in the execution of defendant’s sentence.
 

 At an October 7, 1996, hearing, the district court explained that, as a result of a prisoner lawsuit precipitated by overcrowding, in August 1990 a federal court order closed the county jail to misdemeanor offenders sentenced in Kent County’s district courts. The district court noted that during the three years the jail was closed to misdemeanor offenders, other district courts in the county secured alternate jail sites. The Sixty-Third District Court, however, did not procure substitute jail space and, as a result, accumulated a backlog of offenders whose sentences had not been executed. The district court stated that its understanding was that, because the Sixty-Third District Court also serves as the county district court, county administrators refused to arrange for alternative jail accommodations for the district’s misdemeanor offenders because they feared that other districts in the county would seek to have the county
 
 *616
 
 pay for the jail space obtained for their misdemeanor offenders. When the federal order was lifted in July 1993, the district judges began to work through the backlog of offenders who had not served their jail time. However, because the judges wanted to ensure that current offenders served their time promptly, there was still a large number of misdemeanor offenders from the early 1990s who had yet to serve their sentences.
 

 Defendant informed the court that he is now married and has obtained full-time employment with the National Guard. Defendant stated that he would likely lose his job if he were compelled to serve his jail time. Defendant presented the court with a copy of his driving record to show that he had not incurred any additional alcohol-related violations. Defendant offered to do community service or pay an additional fine in lieu of serving the ninety days in jail. The district court conceded that the delay between the imposition of the sentence and the time defendant was being required to serve the sentence was “extreme,” but refused to reconsider the sentence because it feared that it then would have to do the same for the other offenders left waiting while the federal order was in effect. However, the district court sought guidance from the circuit court regarding whether there were any constitutional considerations in connection with the delayed enforcement of the sentences.
 

 In . a hearing on March 7, 1997, the circuit court rejected defendant’s arguments that he was entitled to relief under MCR 6.427, MCL 771.1(2); MSA 28.1131(2), and MCL 801.107; MSA 28.1757. The circuit court further concluded that incarceration would not violate defendant’s constitutional rights. Accord
 
 *617
 
 ingly, the circuit court affirmed the judgment and sentence entered in the district court. The order incorporating the circuit court’s opinion was entered on October 13, 1997. This Court subsequently granted defendant’s application for leave to appeal.
 

 i
 

 We first review defendant’s various claims that the court lost jurisdiction to implement defendant’s sentence by its violations of several statutes and a court rule. This Court reviews de novo questions of law regarding statutory interpretation.
 
 People v Fox (After Remand),
 
 232 Mich App 541, 553; 591 NW2d 384 (1998). Likewise, the construction of court rules is a question of law that this Court reviews de novo.
 
 People v Valeck,
 
 223 Mich App 48, 50; 566 NW2d 26 (1997).
 

 Defendant argues that the district court lost jurisdiction to enforce the jail sentence because of its failure to comply with MCR 6.427, which provides that “[w]ithin 7 days after sentencing, the court must date and sign a written judgment of sentence” containing certain specified information. In the instant case, the judgment of sentence was dated June 6, 1994, more than three years after the date of sentencing. The district court could not recall when the judgment of sentence had been signed; however, the prosecutor concedes that the requirement that a written order be entered within seven days after sentencing was not met.
 

 The court rules provide no sanction for a court’s failure to complete a judgment of sentence within seven days after sentencing. In the absence of any indication from our Supreme Court that such a result
 
 *618
 
 was intended, we cannot accept defendant’s contention that a court’s failure to sign a judgment of sentence within seven days has the drastic consequence of divesting the court of jurisdiction to execute the sentence.
 
 [2]
 

 Defendant next asserts that the district court lost jurisdiction to execute the jail sentence by its violation of MCL 771.1(2); MSA 28.1131(2), which permits a court to place a defendant on probation while delaying the imposition of sentence for up to one year to give the defendant an opportunity to prove to the court his eligibility for probation or other leniency. We reject defendant’s claim that this statutory provision applies in the present case. There is no suggestion in the record that probation was ever a consideration. Moreover, defendant’s sentencing was not delayed. Rather, defendant was sentenced promptly, but was not required or permitted to serve his sentence for more than five years.
 

 Finally, defendant maintains that he is entitled to relief because of the district court’s violation of MCL 801.107; MSA 28.1757, which permits a county to confine its prisoners in a jail in another county when it has no jail of its own or its jail is unfit or unsafe. Defendant contends that, pursuant to MCL 801.107; MSA 28.1757, Kent County was required to secure alternative placement for misdemeanor offenders who had been sentenced to jail terms. Defendant’s argument fails, however, because this Court has
 
 *619
 
 already stated that the statute “was intended to address the situation where a county jail becomes completely unfit for the incarceration of inmates and must be closed, or for some other reason a county finds itself without a jail at all.
 
 It was not enacted as a mechanism to relieve jail overcrowding.” In re Muskegon Co Bd of Comm’rs,
 
 188 Mich App 270, 290; 469 NW2d 441 (1991) (emphasis added).
 

 n
 

 Defendant next maintains that the district court’s failure to enforce the sentence for more than five years constitutes violations of his rights to due process of law and a speedy trial. This issue presents questions of constitutional law, which we review de novo. See
 
 People v Echavarria,
 
 233 Mich App 356, 358; 592 NW2d 737 (1999).
 

 The Ninth Circuit Court of Appeals discussed the constitutional concerns implicated in the delayed execution of a sentence in
 
 United States v Martinez,
 
 837 F2d 861 (CA 9, 1988). Martinez was sentenced to four years’ imprisonment on April 11, 1973, but remained free on bond while his appeal was pending. The United States Supreme Court denied his petition for certiorari in 1976, but Martinez was never ordered to surrender to begin serving his sentence. Martinez was aware that a mistake of some kind had been made, but he made no effort to contact the authorities regarding the error. However, he did not attempt to flee or to conceal his identity. Eventually, the government discovered that Martinez had never served his sentence and ordered him to report to prison on October 31, 1983. Martinez filed a motion to vacate or set aside his sentence.
 

 
 *620
 
 Martinez argued that his commitment violated his Sixth Amendment right to a speedy trial. The court noted that the United States Supreme Court has not decided whether the Sixth Amendment encompasses the sentencing phase of a trial.
 
 [3]
 

 Id.
 
 at 866. However, even assuming that the execution of a sentence is within the speedy trial guarantee, the court found that Martinez’ rights were not violated. The court explained that Martinez had not asserted his right to a speedy trial and had suffered minimal prejudice.
 
 [4]
 

 Id.
 
 at' 866-867.
 

 Martinez also claimed that incarceration after a
 
 7h-
 
 year delay violated the due process guarantees of the Fifth Amendment. In cases involving delay in the execution of a sentence, federal courts analyze alleged due process violations under theories of waiver and
 
 *621
 
 estoppel, examining the totality of the circumstances surrounding the delay.
 
 [5]
 

 Id.
 
 at 864.
 

 Under the waiver theory, “the government waives the right to incarcerate only ‘when its agents’ actions are so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with “fundamental principles of liberty and justice” to require a legal sentence to be served in its aftermath.’ ”
 
 [6]
 

 Id.,
 
 
 *622
 
 quoting
 
 Green v Christiansen,
 
 732 F2d 1397, 1399 (CA 9, 1984). Under the estoppel theory, four factors must be present: (1) the party to be estopped must know the facts, (2) he must intend that his conduct shall be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting the estoppel must be ignorant of the facts, and (4) that party must rely on the former’s conduct to his injury.
 
 Martinez, supra
 
 at 865. In
 
 Martinez,
 
 the Court concluded that because the government’s actions did not rise to the level of affirmative misconduct, and because Martinez knew that a mistake had been made, his due process argument failed under both the waiver and estoppel theories.
 
 Id.
 
 at 864-865.
 

 In the present case, the circuit court found that the delayed implementation of defendant’s sentence does not violate his constitutional rights. However, under the circuit court’s analysis, no constitutional provision bars the government from requiring a defendant to serve his sentence at
 
 any
 
 time after the sentence is imposed. We reject such a conclusion, and we are persuaded that defendant’s due process rights would be violated by the belated execution of his sentence. Under the facts of this case, requiring defendant to wait more than five years to serve ninety days in jail is inconsistent with fundamental principles of liberty and justice. Accordingly, we hold that the government has waived its right to implement defendant’s sentence.
 

 
 *623
 
 We do not mean to suggest that a sentence is automatically voided because of the state’s delay in implementing it.
 
 [7]
 
 Nevertheless, there is some point at which the state’s unreasonable delay must be deemed to prevent later enforcement of the sentence.
 
 Huff v McLarty,
 
 241 Ga 442, 446; 246 SE2d 302 (1978). As the Seventh Circuit Court of Appeals, in an opinion authored by Chief Judge Posner, has stated, “The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiation of his debt to society and his reintegration into the free community.”
 
 Dunne v Keohane,
 
 14 F3d 335, 336 (CA 7, 1994).
 

 Here, we base our conclusion that the implementation of defendant’s sentence would violate his right to due process on the totality of the circumstances. In addition to the length of time between the imposition and the attempted execution of defendant’s sentence, three factors combine to persuade us that it would be fundamentally unfair to execute defendant’s sentence. First, the delay in the implementation of the sentence is not due to mere negligence, but rather is the direct result of a deliberate choice by county administrators.
 
 [8]
 
 The prosecutor attempts to place the entire
 
 *624
 
 blame for defendant’s situation on the federal court order that prohibited Kent County from housing misdemeanor offenders in its jail. However, while it is true that the federal order was the antecedent cause of the problem, the fact remains that an administrative decision was made not to secure other accommodations for misdemeanor offenders in the Sixty-Third District Court, apparently for the entirety of the three years that the federal order was in effect. The county must bear the consequences of that decision.
 
 [9]
 

 We agree with the following comments made by the Tennessee Supreme Court when deciding a case with similar facts:
 

 We are dealing with two related societal problems, drunk drivers and overcrowded jails.. .. Few would disagree with the proposition that people who operate vehicles in an impaired state deserve to be punished severely.
 

 
 *625
 
 Such punishment, however, has its costs. Longer, mandatory sentences inevitably lead to overcrowded jails, and building more jails severely impacts the public treasury. But the drunk driving problem cannot be addressed in a vacuum. If drunk drivers are to be punished by incarceration the public must stand ready to provide the facilities in which the sentence may be served. Otherwise, the law books will be filled with criminal sanctions having absolutely no meaning and drunk drivers will remain free to endanger the public without the deterrent effect of punishment. A criminal conviction involving a period of incarceration presumes that there is a place where the sentence can be carried out.
 
 [State v Walker,
 
 905 SW2d 554, 557 (Tenn, 1995).[
 
 10
 
 ]
 

 
 *626
 
 A second factor influencing our holding is that defendant requested that he be allowed to serve his sentence. While doubtless many people would be happy to have their jail time deferred as long as possible, where a person asks to begin serving his sentence, fairness requires that he be allowed to do so within a reasonable time so that he is not required to live indefinitely under an unexecuted criminal sentence.
 
 [11]
 
 The waiver theory “is based on the philosophy that a defendant should be allowed to do his time, live down his past, and reestablish himself.”
 
 Shelton v Ciccone,
 
 578 F2d 1241, 1245 (CA 8, 1978).
 

 The final factor affecting our decision is that, since his conviction, defendant has established himself as a productive member of society. Other courts have held that the defendant’s subsequent conduct is relevant in determining whether incarceration after a substantial period has elapsed would be fundamentally unfair, both in cases of mistaken release and where the defendant never commenced serving the sentence. See, e.g.,
 
 United States v
 
 Merritt, 478 F Supp 804, 808 (D DC, 1979);
 
 In re Messerschmidt,
 
 104 Cal App 3d 514, 516; 163 Cal Rptr 580 (1980);
 
 Brown v Brittain,
 
 773 P2d 570, 575 (Colo, 1989);
 
 State v Kline,
 
 475 So 2d 1093, 1093 (La, 1985).
 
 [12]
 
 We agree that where there
 
 *627
 
 is a substantial delay in the implementation of a sentence, changes in the defendant’s circumstances merit consideration. In Michigan, the policy is that a sentence should be proportionate to the seriousness of the circumstances surrounding the offense and the offender. See
 
 People v Milbourn,
 
 435 Mich 630, 636; 461 NW2d 1 (1990). When years elapse between the imposition and the execution of a sentence, changes in the circumstances of the offender may be expected. Indeed, when resentencing a defendant, a trial court may consider any pertinent factors that have arisen since the time of the original sentencing. See, e.g.,
 
 People v Phillips (After Second Remand),
 
 227 Mich App 28, 32-33; 575 NW2d 784 (1997);
 
 People v Moore,
 
 91 Mich App 319, 321; 284 NW2d 483 (1979).
 

 In the present case, defendant has obtained full-time employment and married since the district court sentenced him. He has not committed any additional alcohol-related driving offenses or other violations of the law. If defendant is compelled to serve his sentence, he may be subjected to a court-martial and the loss of his pension. Thus, “[a]n order requiring service of defendant’s sentence now would needlessly jeopardize his long-term adjustment to society, disrupt both his family and his family life, and destroy his economic base, all for no purpose other than to secure blind obedience to the . . . sentence as it was then imposed.”
 
 [13]
 

 Merritt, supra
 
 at 808; see also
 
 State
 
 
 *628
 

 v Buchanan,
 
 149 So 2d 574, 576 (Fla App, 1965) (“[W]e cannot conceive how society at this late date, after the lapse of more than five years, would have a bona fide interest in the enforcement of this judgment ----”).
 

 In sum, we hold that where the government unreasonably delays the implementation of a defendant’s sentence, the defendant’s due process rights come into play.
 
 [14]
 
 Because in the instant case we find that, under the totality of the circumstances, it would be inconsistent with fundamental principles of liberty and justice to implement defendant’s sentence at this late date, we conclude that the government has waived its right to execute defendant’s sentence.
 

 Reversed.
 

 [1]
 

 At the hearing before the district court, the district judge stated that, while he did not specifically recall this incident, he did not dispute that it had occurred.
 

 [2]
 

 The prosecutor argues that the sole purpose of the rule is to induce judges to expeditiously complete the judgment of sentence because the timing of an appeal runs from the date of entry of a written order. See MCR 7.101(B). However, we believe that the rule also suggests an underlying policy that sentences be executed promptly.
 

 [3]
 

 However, in
 
 Pollard v United
 
 States, 352 US 354, 368; 77 S Ct 481; 1 L Ed 2d 393 (1957), the Supreme Court observed: “The Sixth Amendment guarantees to persons accused of crimes in a federal court that they shall receive a ‘speedy and public trial.’ It has never been held that the sentence is not part of the ‘trial.’ ” Here in Michigan, this Court has stated that sentencing is included within the speedy trial guarantee, albeit in the context of the imposition, rather than the implementation, of a defendant’s sentence. See
 
 People v Garvin,
 
 159 Mich App 38, 46; 406 NW2d 469 (1987).
 

 [4]
 

 In determining whether a defendant has been denied a speedy trial, four factors must be balanced: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant from the delay.
 
 Barker v Wingo,
 
 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972). A defendant can experience two types of prejudice while awaiting trial. Prejudice to the person results when pretrial incarceration deprives an accused of many ciyil liberties, and prejudice to the defense occurs when the defense might be prejudiced by the delay.
 
 People v Gilmore,
 
 222 Mich App 442, 461-462; 564 NW2d 158 (1997);
 
 People v Ovegian,
 
 106 Mich App 279, 285; 307 NW2d 472 (1981).
 

 [5]
 

 The
 
 Martinez
 
 Court noted an additional exception to the common-law rule, namely, the doctrine of credit for time erroneously at liberty. One of the early leading cases on credit for time at liberty is
 
 White v Pearlman,
 
 42 F2d 788 (CA 10, 1930). In
 
 White,
 
 a warden mistakenly believed that a prisoner was under a three-year, rather than a five-year, sentence. Even though the prisoner told the warden that there had been a mistake, he was still released. When the error was discovered, the prisoner was reincarcerated to serve the remainder of his sentence. The
 
 White
 
 court held that the prisoner’s sentence continued to run while he was at liberty because a prisoner could not be required to serve a sentence in installments.
 
 Id.
 
 at 789.
 

 The
 
 Martinez
 
 Court stated that credit for time erroneously at liberty applies where a convicted person has served a portion of his sentence and then erroneously been released.
 
 Id.
 
 However, one commentator has argued that the doctrine does not apply only to interruptions of partially served sentences, pointing out that in one of the two cases relied on by
 
 Martinez,
 
 the defendant was given credit for time erroneously at liberty although he had never begun to serve his sentence. See Chin,
 
 Getting out of jail free: Sentence credit for periods of mistaken liberty,
 
 45 Cath U L R 403, 420 (1996). Moreover, the Ninth Circuit Court of Appeals later applied the doctrine in a case where the prisoner had not served any of his sentence. See
 
 Clark v Floyd,
 
 80 F3d 371, 374 (CA 9, 1996). But see
 
 Bailey v Ciccone,
 
 420 F Supp 344, 348 (WD Mo, 1976) (denying the prisoner credit in part because he had never commenced serving the sentence).
 

 [6]
 

 The waiver theory originated in
 
 Shields v Beto,
 
 370 F2d 1003 (CA 5, 1967). In
 
 Shields,
 
 the defendant was extradited to Louisiana while he was serving a sentence in Texas. After he completed the Louisiana sentence, Texas took no action to regain custody of him. Eighteen years later, and twenty-eight years after Texas had released him to Louisiana, the defendant was convicted in a Texas court of passing a forged instrument and sentenced to two years plus the time not served on the first conviction. However, the Fifth Circuit Court of Appeals held that Texas could not require the defendant to serve the remainder of the first sentence. The court explained that “the lack of interest in Shields by the State of Texas from the date he was released to the Louisiana authorities in 1934 until
 
 *622
 
 1962 when again convicted in Texas, a lapse of more than 28 years, was equivalent to a pardon or commutation of his sentence and a waiver of jurisdiction.”
 
 Id.
 
 at 1006.
 

 [7]
 

 For a discussion of the approaches courts have followed in cases where a lapse of time has occurred between the imposition and the execution of a sentence, see, generally, anno,
 
 Effect of delay in taking defendant into custody after conviction and sentence,
 
 98 ALR2d 687.
 

 [8]
 

 Some courts have found that the prisoner was not denied due process when the prisoner bore some responsibility for the delay in the execution of his sentence. See, e.g.,
 
 Mobley v Dugger,
 
 823 F2d 1495, 1497 (CA 11, 1987) (no due process violation where part of the blame for the seven-year delay in execution of sentence was due to defendant’s failure to comply with the terms of his bond and surrender to serve his sentence);
 
 Mathes v Pierpont,
 
 725 F2d 77, 79 (CA 8, 1984) (no due process violation where the delay in the implementation of the sentence was caused by the prisoner’s escape from custody); see also
 
 State v Riske,
 
 152 Wis 2d 260,
 
 *624
 
 265; 448 NW2d 260 (Wis App, 1989) (prisoner not entitled to credit for period after he was supposed to have reported back to the jail).
 

 [9]
 

 The Ninth Circuit Court of Appeals has stated that one reason for granting credit when a sentence is delayed is to limit the power of ministerial officers. In
 
 Smith v Swope,
 
 91 F2d 260 (CA 9, 1937), the court held that the prisoner was entitled to credit from the time of sentencing, when the marshal not only failed to deliver him to prison “forthwith,” but did not do so until five years later. The court explained:
 

 The least to which a prisoner is entitled is the execution of the sentence of the court to whose judgment he is duly subject. . . . The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody. Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers.
 
 [Id.
 
 at 262.]
 

 [10]
 

 In
 
 Walker,
 
 as in the instant case, a federal court order limited the number of prisoners that could be housed in the county jail. The two defendants, who had been sentenced to time in jail for alcohol-related driving violations, were not ordered to report to jail until more than a year after their sentences had been imposed. The Tennessee Supreme Court held that “where persons under a criminal sentence present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run when the judgment of conviction becomes final or the prisoner is actually incarcerated, whichever is earlier.”
 
 Walker, supra
 
 at 557. The Court based its holding on three Tennessee statutes that it found indicated a legislative intent that the sheriff commit a defendant to jail as soon as possible after the rendition of the judgment. See
 
 id.
 
 at 556-557.
 

 While Michigan does not have a statute with similar language, we note that the Legislature has provided that when a person is sentenced to imprisonment in the county jail,
 

 the clerk of the court shall, as soon as may be, make out and deliver to the sheriff of the county or some officer in court, a transcript from the minutes of the court, of the conviction and sentence duly certified by such clerk, which shall be sufficient authority for the sheriff to execute such sentence, and he shall execute the same accordingly. [MCL 769.16; MSA 28.1086.]
 

 It appears to us that the requirement that the clerk prepare and deliver to the sheriff a certified copy of the conviction and sentence
 
 “as soon as may be"
 
 evidences a legislative intent that jail sentences be executed promptly.
 

 [11]
 

 See
 
 Carter v State,
 
 339 So 2d 594, 596 (Ala Crim App, 1976) (“[W]hen the appellant reported to complete serving his sentence ... he did all that was required of him . . . .”);
 
 Huff, supra
 
 at 445 (“Where the state makes no move to initiate the sentence, the defendant must offer himself up if he wishes the term to begin to run.’);
 
 Walker, supra
 
 at 557 (“[WJhere persons under a criminal sentence immediately present themselves to the appropriate authorities for incarceration and are turned away the sentence in each case shall begin to run . . . .”)•
 

 [12]
 

 Cf.
 
 DeWitt v Ventetuolo,
 
 6 F3d 32, 35 (CA 1, 1993) (where the petitioner had been released on parole and established roots in community, his due process rights were violated when, six years later, the court found
 
 *627
 
 that the earlier suspension of sentence was erroneous and returned him to prison).
 

 [13]
 

 As the California Court of Appeals has stated in a case where a prisoner was erroneously released before the completion of his sentence, “[D]ue process is interpreted to mean fundamental fairness and fair play and governs situations in which the mistakenly released prisoner peacefully reestablishes himself as a productive member of the community only
 
 *628
 
 to have his good works destroyed by reincarceration after many years.”
 
 In re Messerschmidt, supra
 
 at 516.
 

 [14]
 

 A Pennsylvania court reached a different conclusion in deciding a case where execution of the defendant’s sentence had been delayed. Because of a clerical error, the defendant, Blair, was not required to begin serving his sentence until more than two years had passed. The court refused to grant any relief, explaining:
 

 We will not allow the court system’s inadvertent error to cancel any part of Blair’s punishment for the crimes for which he was justly convicted and sentenced. Society has an interest in knowing that its criminals are serving the punishment to which they have been sentenced, regardless of an unintended delay or negligent error attributable to the government. The fact remains that, regardless of the delay, Blair has not served the time he was so ordered to serve.
 
 [Commonwealth v
 
 Blair, _ Pa Super _, _; 699 A2d 738, 743 (1997).]
 

 While we do not take lightly society’s interest in having a criminal actually serve his sentence, we do not believe that a rule that would impose no limits on when the government may execute the sentence is constitutionally permissible.