*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

LYNN BETH BAUM,

        Plaintiff/Counterdefendant-Appellee,

v

DAVID BAUM, DB ACQUISITION, LLC, DAVID
M. BAUM REVOCABLE TRUST, MADISON
EQUITIES, LLC, N.W. PROPERTIES, LLC, and
ALLIANCE EQUITIES, LLC,

        Defendants,

and

DAVID BAUM, PC,

        Defendant/Cross-Defendant,

and

HOWARD BAUM,

        Defendant/Counterplaintiff/Cross-
        Plaintiff,

and

FRASER EQUITIES, LLC,

        Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 355489
Oakland Circuit Court
LC No. 2015-149725-CZ

---

LYNN BETH BAUM,

        Plaintiff/Counterdefendant-Appellee,

v                                                    No. 355491
                                                     Oakland Circuit Court
DAVID BAUM, DB ACQUISITION, LLC, DAVID               LC No.   2015-149725-CZ
M. BAUM REVOCABLE TRUST, MADISON
EQUITIES, LLC, N.W. PROPERTIES, LLC, and
FRASER EQUITIES, LLC,

          Defendants,

and

DAVID BAUM, PC,

          Defendant/Cross-Defendant,

and

HOWARD BAUM,

          Defendant/Counterplaintiff/Cross-
          Plaintiff-Appellant,

and

ALLIANCE EQUITIES, LLC,

          Defendant-Appellant.

_____

Before:  MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

This case involves two separate criminal contempt proceedings that arose from plaintiff Lynn Baum's attempt to recover funds that her husband, David Baum, had transferred to his brother, Howard Baum, and to Howard's companies in contemplation of Lynn and David's divorce.[1] In Docket No. 355489, one of Howard's companies, Fraser Equities, LLC, appeals as of right the trial court's order holding it in contempt of court. We reverse in Docket No. 355489 because the court clearly erred when it found that Fraser was in contempt. In Docket No. 355491, Howard and his company Alliance Equities, LLC, appeal as of right the trial court order finding them in contempt of court. Because none of Howard and Alliance's arguments warrant reversal, we affirm in Docket No. 355491.

---

[1] For ease of reference, the parties will be referred to by their first names.

## I. BASIC FACTS

In contemplation of his divorce from Lynn, David transferred marital funds to his brother, Howard. Lynn filed a fraudulent-transfer claim, which proceeded to a jury trial. Following the trial, a jury found that David had fraudulently transferred $240,583.90 to Madison Equities and $771,451.76 to Fraser Equities. Thereafter, Lynn moved for entry of judgment against Howard, Madison Equities, and Fraser Equities (the Howard defendants) in the amount of $1,159,737.23. She also requested an injunction prohibiting any of the Howard defendants from transferring any of its assets until satisfaction of the judgment. Relevant to the issues raised on appeal, on December 17, 2018, the court entered an injunction prohibiting "further disposition by the debtor, David Baum[,] and the transferees, Howard Baum, Madison Equities, LLC and Frasier [sic] Equities, LLC for the assets transferred or of their other property." Subsequently, on March 20, 2019, as relevant to this appeal, the court entered an opinion and judgment that awarded Lynn $982,927.08 as to Fraser.

On August 19, 2019, Lynn moved to require the Howard defendants to show cause why they should not be held in contempt for violating the December 17, 2018 injunction. Lynn asserted that four months after entry of the injunction and two days after entry of the trial court's March 20, 2019 judgment, Fraser violated the injunction by selling real property for $680,000. Following a hearing, the trial court granted Lynn's motion for a show cause. At the show-cause hearing, the primary issue was whether the court's December 17, 2018 order, enjoining Fraser from transferring any of its assets, survived entry of the March 20, 2019 opinion and judgment. Although Fraser had entered into a purchase agreement to sell its property while the injunction was effective, the property was not transferred until two days after entry of the March 20 judgment. Howard also asserted that any violation of the injunction was not willful because he had relied on his lawyer's advice that the December 2018 injunction was no longer effective.

The contempt proceedings related to the alleged violation of the December 17, 2018 injunction were not quickly resolved. While they were ongoing, Lynn moved for relief supplementary to judgment under MCL 600.6101 *et seq*. and MCR 2.621. The court granted her motion and, on November 14, 2019 entered the following injunction:

> [A]n injunction is issued against Alliance and Howard Baum, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, forbidding them to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the Judgment Debtors [Fraser Equities and Madison Equities], or to which they may be entitled or which may thereafter be acquired by or become due to said Judgement Debtors, or to pay over or otherwise dispose of any moneys due or to become due to such Judgment Debtors, . . . .

On January 3, 2020, Lynn filed a motion for entry of a second order requiring Howard and Alliance Equities to appear and show cause why they should not be held in contempt for violating the court's November 14, 2019 injunction. Lynn argued that both Howard and Alliance violated the court's order because the same day the order was entered, Howard withdrew $370,000 from

Alliance's bank account. Lynn maintained that Howard should be held responsible individually and as the sole member of Alliance.

After granting Lynn's motion to show cause as to Howard and Alliance, the court held a hearing on February 28, 2020, regarding whether Howard and Alliance intentionally violated the court's November 14, 2019 order. Lynn introduced evidence, including Howard's admissions, that showed that Alliance had issued a cashier's check in the amount of $370,000 approximately 45 minutes after the trial court issued the November 14, 2019 injunction. The check was drawn from Alliance's funds and was made out to Alliance. Howard's and Alliance's defense was that because the check was made out to Alliance and was still under Alliance's control, there was no "transfer" in violation of the court's order.

The court took the matter under advisement and said it would issue its decision at 8:30 a.m. on March 6, 2020, and it ordered Howard to appear at that time. As described in *Baum v Baum*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket Nos. 351269 and 353066), p 7, Howard was not present for the 8:30 a.m. proceeding. The court afforded Howard additional opportunities to appear at 11:00 a.m. and 3:00 p.m., but he did not meet any of those deadlines. *Id*. The court ultimately held Howard in contempt of court, and this Court affirmed. *Id*. at 21-25.

With Howard being remanded to jail for his contemptuous conduct for failing to appear, the court noted that it would hold its opinion and order on the underlying criminal contempt charge related to the $370,000 in abeyance. Thereafter, following delays attributable to the COVID-19 pandemic and Howard's motion to have the trial judge disqualified, the court issued its opinion and judgment on November 12, 2020. Regarding the first criminal contempt matter, the court held that the March 2019 judgment did not extinguish the December 2018 injunction. It then found that Howard was not in contempt, individually and as Fraser's agent, because, although he violated the 2018 injunction, he lacked the necessary *mens rea* to have willfully or intentionally violated it because he sought the advice of his lawyer. However, the court found that Fraser was in criminal contempt because it had not received any advice as to whether the December 17, 2018 injunction remained in effect after the March 2019 judgment was entered.

Regarding the second criminal contempt matter, the court found that both Howard and Alliance had "willfully disregarded and/or disobeyed" the November 14, 2019 injunctive order. The court found that Howard, on behalf of Alliance, withdrew $370,000 from Alliance's account less than an hour after the court entered its order prohibiting transfers of property and possessed the resulting cashier's check, made out to Alliance, from November 14, 2019, until January 22, 2020. The court found that such possession was done with the intent to interfere with the transferring of Alliance's property. Likewise, the court found that Alliance had engaged in criminal contempt through the actions of Howard, its agent.

This appeal follows.

## II. DOCKET NO. 355489—THE FIRST CONTEMPT PROCEEDING

### A. STANDARD OF REVIEW

Fraser argues that the trial court erred by holding it in criminal contempt. We review a trial court's decision regarding a contempt motion for an abuse of discretion, but review its factual findings for clear error. *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

### B. ANALYSIS

"The elements necessary to support a conviction of criminal contempt are (1) a wilful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988). "A wilful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id*. at 579. Here, at the first criminal contempt hearing, Fraser and Howard offered evidence that Howard had sought the advice of a lawyer regarding the legality of selling the Fraser property. Howard's lawyer informed him that it was legal because, in the lawyer's opinion, the injunction was no longer in effect after entry of the March 20, 2019 judgment. Based on that evidence, the court found

> the record support that Howard sought legal advice; however, it also finds that [his lawyer] did not file an appearance in this case but there was evidence to support that [his lawyer] represented Howard only. Based on the factual record as well as the Michigan law cited by [Lynn], this Court finds that an attorney's legal advice is not a valid defense to criminal contempt charges; however, based upon the entire record, this Court is unable to conclude—beyond a reasonable doubt—that Howard willfully or intentionally violated this Court's injunction order given the fact that he sought [his lawyer's] advice prior to proceeding with the sale of Fraser's property.

Thus, it is clear that the court found that Howard, personally, was not in contempt on the sole basis that he lacked the requisite intent.

But with regard to Fraser, the trial court found:

> the record does not reflect Fraser received any advice—legal or otherwise. Specifically, [Howard's lawyer] testified at the hearings. This Court finds that he did not represent Fraser and did not give any advice to Fraser. There was no argument or evidence presented that [Howard's lawyer] represented Fraser. Therefore, this Court finds that [Howard's lawyer] did not represent Fraser at the time (March 20, 2019 to March 22, 2019). Instead, this Court finds that [a different lawyer] was Fraser's attorney during the court proceedings and he filed an appearance as Fraser's attorney. Further, there is no evidence that [Fraser's lawyer] advised Fraser that (1) 2018 Injunction could be extinguished with a judgment and (2) that Howard could sell Fraser Property. As such, this Court does not find that

Fraser had any legal advice as to its decision to proceed with the sale of the Fraser Property.

In sum, the court first found that Howard did not possess the necessary intent to violate the December 2018 injunction, but reached the opposite conclusion with respect to Fraser. The flaw in the court's reasoning is that Howard was Fraser's sole member and agent. Fraser, as an artificial, nonliving, nonsentient, business entity, was incapable of truly having any intent. See *Green v Ziegelman*, 310 Mich App 436, 450-451; 873 NW2d 794 (2015). Instead, such entities can only act, and are imputed with knowledge, through its employees. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213; 476 NW2d 392 (1991). Thus, corporations are considered to have acquired the collective knowledge of its employees. *Id*. at 213-214. As a result, in order to find that Fraser had the requisite intent, the court necessarily had to find that one of Fraser's agents possessed this intent. Thus, given that the court expressly found that Fraser's sole agent did not possess this intent, we conclude that the court clearly erred by finding that Fraser willfully violated the December 2018 injunction. It is not rational to impute a different intent to Fraser in light of the court's finding that Howard, Fraser's sole agent, lacked criminal intent. We therefore reverse the order holding Fraser in contempt.[2]

### III. DOCKET NO. 355491—THE SECOND CONTEMPT PROCEEDING

### A. SUFFICIENCY OF AFFIDAVIT

Howard and Alliance first argue that the trial court erred by proceeding with the show-cause hearing because Lynn's motion to show cause was defective on account of the accompanying affidavit. This issue involves the interpretation and application of court rules, which this Court reviews de novo. *Kernen v Homestead Dev Co*, 252 Mich App 689, 692; 653 NW2d 634 (2002).

"A trial court has inherent and statutory authority to enforce its orders." *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012). "The trial court must carry out the proper procedures before it can issue an order holding a party or individual in contempt of court." *Id*. MCR 3.606(A) states:

> For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either
>
> (1) order the accused person to show case, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or
>
> (2) issue a bench warrant for the arrest of the person.

In turn, the supporting affidavits must meet the requirements of MCR 2.119(B)(1), which provides:

---

[2] Given our resolution, we need not address the additional arguments raised by Fraser on appeal in Docket No. 355489.

If an affidavit is filed in support of or in opposition to a motion, it must:

(a) be made on personal knowledge;

(b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and

(c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

In his affidavit, Lynn's lawyer identified the November 14, 2019 injunction prohibiting any transfer of any of Alliance's assets, and he averred that on that same day, $370,000 was withdrawn from Alliance's bank account. He explained that he had personal knowledge of the transaction based on his review of bank records, which he obtained through a subpoena.

On appeal, Howard and Alliance argue that Lynn's lawyer's affidavit is defective because it was based on hearsay and not personal knowledge. They note, in particular, that Lynn's lawyer was not present at the purported transfer of money. [3] Their argument, however, fails to recognize that the bank records referenced in the affidavit fall within an exception to the hearsay rule. MRE 803(6) specifically excepts from the hearsay rule records that are kept in the course of a regularly conducted business activity.[4] Consequently, because Lynn's lawyer affidavit establishes that he had personal knowledge regarding how he obtained the business record and had personal knowledge about the contents of the business record, the affidavit complied with MCR 3.606(A) and MCR 2.119(B)(1), and the court did not err by granting Lynn's motion to conduct a show-cause hearing.[5]

## B. QUASHING OF SUBPOENA

Howard and Alliance next argue that the trial court erred by quashing their subpoena to have Lynn's lawyer testify at the show-cause hearing. This Court reviews for an abuse of

---

[3] Howard and Alliance also contend that the affidavit should be deemed deficient because it states that Lynn's lawyer could testify "completely" instead of "competently." But they offer no authority that this alteration in words is fatal to an affidavit. Indeed, it is presumed that every person is competent to be a witness. MRE 601.

[4] The trial court later admitted the bank record, with Howard and Alliance taking no issue with its admission. In addition to the bank record itself, an affidavit from a representative of the bank was admitted. The significance of that affidavit from the custodian of the record was to show that the record was maintained in the course of a regularly conducted business activity.

[5] Howard and Alliance's reliance on *Ferranti v Electrical Resources Co*, 330 Mich App 439; 948 NW2d 596 (2019) is misplaced. In that case, the affiant provided the content for his affidavit after asking "members of [his] support team and [the] operations team to pull the data that was being requested." *Id*. at 446. This Court held, among other deficiencies in the affidavit, that the affiant lacked personal knowledge. *Id*. Yet, unlike this case, there is no hearsay exception to the information the affiant learned from others. As a result, this case is distinguishable from *Ferranti*.

discretion a trial court's decision to quash a subpoena. *Fette v Peters Constr Co*, 310 Mich App 535, 547; 871 NW2d 877 (2015). "MCR 2.506 is the general rule governing the issuance of subpoenas" compelling a person to testify at trial. *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 380 n 1; 617 NW2d 310 (2000). The proper way to challenge such a subpoena is stated in MCR 2.506(H).

Here, Lynn's lawyer moved under MCR 2.506(H) to quash the subpoena. However, he further argued that the subpoena was defective because it did not comport with MCR 2.506(G)(1), which provides, in pertinent part, that "[t]he fee for attendance and mileage provided by law must be tendered to the person on whom the subpoena is served at the time of service." At the hearing, without addressing Lynn's lawyer's other arguments, the court granted the motion to quash the subpoena solely on the basis that there were no fees tendered to Lynn's lawyer at the time of service.

Although nothing in the language of MCR 2.506(G)(1) precludes its application to criminal or quasi-criminal matters, Howard and Alliance argue that in criminal proceedings, the witness and mileage fees can be paid after the witness testified. On appeal, they direct this Court to cases from our Supreme Court that show that fees do not need to be tendered until after the witness has testified.

They first rely on *Chase v Kalamazoo Circuit Judge*, 154 Mich 271; 117 NW 660 (1908), which involved a criminal prosecution for violating a provision of the pure food act. *Id*. at 271-272. Although the county prosecutor was representing the people, a representative of the Attorney General's office was assisting. *Id*. at 272. The prosecutor's office and the Attorney General's office disagreed about who was responsible for paying witness fees. The prosecutor argued that under the pure food act, the expense of the witnesses and officers should be paid by the state, while the Attorney General argued that the fees should be paid by the county, just like in other criminal cases. *Id*. The Court admonished the parties and ruled as follows:

> Fees in criminal cases are not required to be paid in advance. They are only paid after the trial upon due proof of attendance. The statute makes it "the duty of all prosecuting officers of this state to prosecution to completion all suits brought under the provisions of this act upon the complaint of the commissioner or of any citizen." Section 20, No. 193, p 362, Pub Acts 1895. We find nothing in the statute to authorize the issuing of a subpoena in any other than in the ordinary form. The proper time to raise the question of liability is after the expenses have been incurred, and by some proper proceeding to determine whether the state or the county is liable. Criminal trials should not be delayed by raising questions of this character. It was the duty of the prosecuting attorney to instruct the clerk to issue subpoenas in the ordinary form and in the customary way. The court, when the matter was brought to its attention, should have instructed its clerk to issue the usual subpoenas in criminal cases. [*Id*. at 273.]

Thus, it appears that the Court determined that fees in criminal cases are not required to be paid in advance by interpreting a *statute*.

Howard and Alliance have not identified a pertinent statute allowing witness fees to be paid after a witness testifies. To the extent that there is a statute that applies to the present circumstance and allows witness fees to be paid after a witness testifies, such a requirement would directly conflict with the current court rule. It is clear that when a witness is to be paid his fee is a matter of procedure and not one of substantive law. Being a matter of pure procedure, the court rule would take precedence. See *Stenzel v Best Buy Co, Inc*, 320 Mich App 262, 279; 906 NW2d 810 (2017). Therefore, our Supreme Court's interpretation of a statute in 1908 is not controlling.

Howard and Alliance also rely on *In re Petition of Labor Mediation Bd*, 365 Mich 645, 655; 114 NW2d 183 (1962), in which the Court ruled that "[t]he trial judge correctly held that tendering of witness fees to defendants at the time the subpoenas were served was not required." First, the *Labor Mediation* case involves the authority of the state's labor mediation board and did not involve a criminal proceeding, *id*. at 647, so it does not stand for the proposition that Howard and Alliance suggest (that in criminal cases, witness fees do not need to be paid until after the witness testifies). Second, the Court's pronouncement again was an interpretation of statutory law, 1948 CL 423.1 *et seq*. and 1948 CL 423.201 *et seq*., which are known as the labor mediation act and the public employment relations act. *Labor Mediation*, 365 Mich at 647 & n 1, 652 & n 3. There is no contention that these statutory provisions involving labor mediation boards pertain to the instant criminal contempt proceeding in a civil case.

Howard and Alliance lastly impliedly suggest that the trial court should have entertained other, less severe remedies for failing to comply with MCR 2.605(G)(1). They cite *Castillon v Roy*, 412 Mich 873 (1981), in which the Supreme Court held that the trial court abused its discretion when it quashed a subpoena "without further inquiry into the circumstances." *Id*. The Court stated that "the evidence at issue was essential to a fair hearing of plaintiff's claims." *Id*. This case is distinguishable because Lynn's lawyer's testimony would not be essential to a fair hearing.[6] Lynn's lawyer's testimony ostensibly would have clarified how he obtained various documents from the bank. But how he received the documents was not pertinent to any defense. Indeed, at the time of the court's ruling, Howard had already submitted an affidavit in which he admitted that, as sole member of Alliance, he withdrew $370,000 from Alliance's bank account. Howard and Alliance defended on the ground that because the funds were contained within a cashier's check made out to Alliance, and because Alliance maintained control over the check, there was no "transfer" of funds. Thus, Lynn's lawyer's limited knowledge would have been of no assistance in resolving *any* pertinent factual disputes. Accordingly, the court did not abuse its discretion when it quashed the subpoena to compel Lynn's lawyer's to appear and testify.

---

[6] At the hearing, the defense lawyer admitted that Lynn's lawyer's testimony was not "essential" when he conceded that he did not know if he would need to call Lynn's lawyer's as a witness.

For the same reasons, Howard and Alliance's claim that they were denied the right to present a defense is without merit.[7]  Howard and Alliance argue on appeal that by quashing the subpoena, the trial court "precluded [them] from presenting testimony Plaintiff was without *admissible* evidence as to (i) *who* requested the cashier's check, (ii) *precisely when* it was requested and (iii) under *what* circumstances it was requested."  However, at the February 28, 2020 hearing, Howard and Alliance's lawyer stipulated to the admission of the copy of the cashier's check "with the understanding that this is a copy of the document that I gave [Lynn's lawyer] in court on or about January 22nd, and I believe I tendered to the Court a colored copy of that."  Thus, Howard and Alliance's lawyer knew how Lynn's lawyer received a copy of the check.  Additionally, Howard and Alliance do not explain how it is relevant who requested the record of the cashier's check (from the bank), precisely when that request was made, and under what circumstances the request was made.  Based on our own review of the record, we do not see how any of that information has any material evidentiary value.  Indeed, none of those inquiries relates to whether Howard or Alliance willfully violated the trial court's 2019 injunction.  As a result, Howard and Alliance have failed to show how, if they were precluded from presenting a defense, the error was outcome-determinative.

## C.  FACTUAL FINDING OF PERSONAL INVOLVEMENT

Howard argues that the trial court's finding that he was the person who withdrew the $370,000 on behalf of Alliance was not supported by the admissible evidence.  Specifically, he challenges the court's findings that he was the person who personally requested the cashier's check and withdrew the $370,000 from Alliance's bank account.  Howard claims that in order for the court to have reached these conclusions, it had to have relied on proposed Exhibit 4, a copy of a withdrawal slip from the bank.  Proposed Exhibit 4 was never admitted into evidence.  Thus, the question is whether the trial court's findings are clearly erroneous after a review of the entire (admissible) record.  See *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990) (stating that a review of whether a finding was clearly erroneous requires consideration of "all the evidence").

We do not have a definite and firm conviction that the trial court made a mistake when it found that Howard was the person who requested the cashier's check and withdrew the money from Alliance's bank account.  Notably, the trial court, as the finder of fact, was permitted to draw logical inferences from the evidence.  See *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (" 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' ") (citation omitted); *People v Reese*, 491 Mich 127, 156; 815 NW2d 85 (2012) (stating that the trial court is permitted to make findings on the basis of logical inferences from the testimony).  Howard had admitted that he was the sole

---

[7] Howard and Alliance aver, with no argument in support, that the denial of the right to present a defense is a structural error requiring reversal.  By failing to present support for this claim, they have abandoned review of it.  See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.").

member of Alliance and that Alliance had withdrawn the $370,000 from its account. It is well established that corporations and other business entities can only act through their agents. *AB Petro Mart, Inc v Ali T Beydoun Ins Agency, Inc*, 317 Mich App 290, 296 n 2; 892 NW2d 460 (2016); see also MCL 450.4401(a) (stating that members of LLCs are considered managers) and MCL 450.4406 (stating that managers are agents of the LLC). Therefore, with Howard being Alliance's sole member and manager, and there being no evidence of anyone else acting on behalf of Alliance, the trial court did not clearly err by finding that Howard was the person who initiated and effectuated the withdrawal of the $370,000.

## D. OTHER FACTUAL FINDINGS

Howard and Alliance argue that the trial court clearly erred by finding that they willfully violated the court's November 14, 2019 order. First, Howard and Alliance argue that there was no violation of the order because there was no "transfer" of funds. The order however precluded them from "mak[ing] or suffer[ing] any transfer or other disposition of, or to interfere with, any property belonging to the Judgment Debtors . . . ." Thus, the injunction not only prohibited the "transfer" of property, but also prohibited "other disposition" and more importantly, it prohibited them from "interfer[ing]" with property.

Although the defense expert opined that creating a cashier's check does not "transfer" funds but merely qualifies as a "certification" of funds, the trial court was not obligated to accept that opinion. See *People v Jackson*, 390 Mich 621, 625 n 2; 212 NW2d 918 (1973). Moreover, the court was free to find that the creation of the cashier's check constituted an interference with property. "Interfere" is defined, in pertinent part, as "to interpose in a way that hinders or impedes." *Merriam-Webster's Collegiate Dictionary* (11th ed). The evidence showed that Alliance created a cashier's check made out to itself in the amount of $370,000, which removed the funds from its bank account. Alliance then proceeded to hold onto the check until it was ordered to redeposit the funds two months later. There is no apparent purpose, other than to create interference, for one to create a cashier's check in the person's own name and to hold onto it. Neither Howard nor Alliance proffered any explanation for this action. Consequently, from the record evidence, the trial court did not clearly err by finding that the $370,000 withdrawal and creation of a cashier's check violated the November 14, 2019 order.

Howard and Alliance also argue that they cannot be held in contempt because there was insufficient evidence to show that they possessed the requisite *mens rea*. As noted before, a finding of criminal contempt requires there to be a *willful* disregard or disobedience of a court order. *MacLean*, 168 Mich App at 579. Howard and Alliance contend that because there was no evidence that they had actual knowledge of the November 14, 2019 order, it is impossible to satisfy the "willful" element. We disagree.

Evidence was admitted that showed that the November 14, 2019 order was entered at approximately 4:00 p.m. and that the $370,000 withdrawal occurred approximately 47 or 48 minutes later. Howard and Alliance do not seriously challenge these findings and even accepted them at the hearing. In attempting to prove that Howard and Alliance possessed actual knowledge of the court's injunction, Lynn directed the court to the fact that Howard and Alliance were served with the order electronically. Although Howard and Alliance argued that this did not prove actual knowledge because only their lawyers were actually notified through the electronic service, logical

inferences are permissible and minimal circumstantial evidence is needed to prove a defendant's state of mind. See *Oros*, 502 Mich at 239 (citation omitted). The circumstantial evidence supported an inference that after their lawyers were notified of the order's existence, Howard and Alliance were informed about it. Indeed, the temporal proximity between the issuance of the order and the withdrawal of funds is circumstantial evidence that Howard and Alliance knew about the order. This is especially true when there was nothing else in the record—other than the issuance of the order—that would prompt Alliance to take this action. Further, with no explanation (plausible or otherwise) for why Alliance needed or wanted to deplete its bank account and issue a cashier's check in its own name, it was permissible for the court to infer that the transfer was done in defiance of the court's order and with intent to create interference with the funds. Therefore, the trial court did not clearly err.

## E. APPLICABILITY OF MCL 600.1721

Howard and Alliance argue that the trial court erred by relying on MCL 600.1721 in ordering restitution as part of their punishment for being found in criminal contempt. In its opinions and orders finding Howard and Alliance in criminal contempt, the trial court sentenced them, in pertinent part, to "pay for restitution to Lynn Baum pursuant to MCL 771.3(1)(e), MCL 600.1721 and *Taylor v Currie*, 277 Mich App 85[; 743 NW2d 571] (2008)." Notably, the trial court relied on *three* different authorities to impose the sanction of restitution: MCL 771.3(1)(e), MCL 600.1721, and *Taylor*. On appeal, Howard and Alliance only contest the appropriateness of *two* of those authorities; they do not address MCL 771.3(1)(e). It is well established that an appellant's failure to dispute the basis of a trial court's ruling constitutes a waiver. See *Pegasus Wind, LLC v Tuscola Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355715); slip op at 20 (stating that this Court need not review a claim of error when the appellant fails to address the basis of the lower court's ruling). By failing to address the trial court's reliance on MCL 771.3(1)(e), Howard and Alliance have abandoned any challenge to the imposition of restitution.

## F. DUE PROCESS

Howard argues that the trial court violated his due-process rights by imposing his punishment for criminal contempt. Howard never raised this issue in the trial court, so it is unpreserved. We review unpreserved constitutional issues for plain error affecting substantial rights. *People v Posey*, 334 Mich App 338, 346; 964 NW2d 862 (2020).

MCL 600.1715(1), which governs punishment for criminal contempt, provides:

> Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00, or imprisonment which . . . shall not exceed 93 days, or both, in the discretion of the court. The court may place an individual who is guilty of criminal contempt on probation in the manner provided for persons guilty of a misdemeanor as provided in chapter XI of the code of criminal procedure, 1927 PA 175, MCL 771.1 to 771.14a.

The trial court, while relying on this provision, imposed the following jail sentence as part of Howard's punishment:

- Howard Baum shall be sentenced to 60 days in the Oakland County Jail. This Court suspends 50 days of Howard Baum's sentence. The remaining 10 days shall be held in abeyance and is subject to execution at any time without further order or review or subsequent hearing.

On appeal, Howard claims that the open-ended enforcement of the 10-day imprisonment violates his due-process rights *as a probationer*. See *People v Sutton*, 322 Mich 104; 33 NW2d 681 (1948) (stating that a probationary order must be sufficiently clear to notify the probationer what is required of him). However, we do not read the trial court's order as providing that the 10-day sentence would be enforced upon violation of probation. The plain language of the order allows the trial court to enforce it "at any time." Accordingly, we will review this issue in context.[8]

An open-ended, delayed execution of a sentence of imprisonment was addressed in *People v Levandoski*, 237 Mich App 612; 603 NW2d 831 (1999). In *Levandoski*, the defendant pleaded guilty to operating a vehicle while impaired and was sentenced to 90 days in jail. *Id*. at 614. However, because of a shortage of jail space, the defendant was sent home until further notice. *Id*. More than five years after his guilty plea, the defendant was notified that he was to report to jail to serve his 90-day sentence. *Id*. at 615. This Court reversed and held that the defendant's due-process rights were violated. *Id*. at 622. This Court noted that the constitution prohibits "the government from requiring a defendant to serve his sentence at *any* time after the sentence is imposed." *Id*. This Court explained that a sentence is not automatically voided because of the state's delay in implementing it; rather a review of "the totality of the circumstances" is needed to determine if a defendant's due-process rights would be violated. *Id*. at 623. One of the main factors to consider is the length of time between the imposition and the attempted execution of a sentence *Id*.

Because there has been no attempt to enforce the 10-day sentence, this issue is not ripe for appellate review. Due process is implicated when there is, among other things, a deprivation of liberty. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 201; 761 NW2d 293 (2008). Until the 10-day sentence is enforced, Howard will not have been deprived of any liberty. Moreover, because the primary concern is the amount of time that has passed between sentencing and the enforcement of that sentencing, with there being no attempt at enforcement yet, that factor cannot properly be analyzed.[9] Accordingly, any claim related to the enforcement of that sentence is premature and not ripe for appellate review, see *Van Buren Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017) (stating that a party has to have sustained an actual injury for a claim to be ripe). We, therefore, decline to address it at this time.

---

[8] To the extent Howard avers that the terms of his probation are not clear, that argument has no merit. The order of probation clearly spells out the requirements: it sets the start and end dates of probation; it requires Howard to not violate any criminal law; it requires Howard to seek permission of the court before leaving the state; and it requires him to pay restitution to Lynn.

[9] Likewise, because this issue is not ripe and was not raised in the trial court, there is nothing in the record addressing the totality of the circumstances, such as Howard's conduct since the date of sentencing. See *Levandoski*, 237 Mich App at 623-626.

## IV.  CONCLUSION

In Docket No. 355489, we reverse the court's order holding Fraser in criminal contempt of court.  We do not retain jurisdiction.  Fraser, as the prevailing party, may tax costs.  MCR 7.219(A).  In Docket No. 355491, we affirm.  Lynn, as the prevailing party, may tax costs.  MCR 7.219(A).

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly